IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


FRED HARRIS, JR.,
       Petitioner,

vs.                                    Case No.: 3:11cv484/MCR/EMT

MICHAEL D. CREWS,[1]
       Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 2, 3). Respondent filed an answer and relevant portions of the state court record (doc. 35). Petitioner filed a reply (doc. 38).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 35).[2] Petitioner was charged in the Circuit Court in and for Escambia County,

---

[1] Michael D. Crews succeeded Kenneth S. Tucker as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 35). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2006-CF-1218, with one count of burglary of an unoccupied dwelling (Count 1) and one count of grand theft ($300 or more but less than $5,000) (Count 2) (Ex. A). Following a jury trial, he was found guilty as charged (Exs. B, C). On November 29, 2006, Petitioner was sentenced as a habitual felony offender to thirty (30) years of imprisonment on Count 1 and a concurrent term of ten (10) years of imprisonment on Count 2, with pre-sentence jail credit of 44 days (Ex. D).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-6727 (Exs. E, F). The First DCA affirmed the judgment per curiam without written opinion on August 28, 2008, with the mandate issuing September 15, 2008 (Exs. I, J). Harris v. State, 988 So. 2d 1095 (Fla. 1st DCA 2008) (Table). Petitioner did not seek further review.

On May 21, 2009, Petitioner file a habeas petition in the First DCA, Case No. 1D09-2502, alleging ineffective assistance of appellate counsel (Ex. K). The First DCA denied the petition on the merits on June 29, 2009. Harris v. State, 12 So. 3d 319 (Fla. 1st DCA 2009) (Mem). The First DCA denied Petitioner's motion for rehearing on August 25, 2009 (Ex. N).

On June 19, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. O). In an order rendered May 19, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion "within a reasonable time" (Ex. Q). Petitioner filed an amended motion on June 12, 2010 (Ex. R). The state circuit court summarily denied it on January 21, 2011 (Ex. V). Petitioner appealed the decision to the First DCA, Case No. 1D11-1420 (Ex. W). The First DCA affirmed the judgment per curiam without written opinion on June 14, 2011, with the mandate issuing August 15, 2011 (Exs. X, AA). Harris v. State, 65 So. 3d 1057 (Fla. 1st DCA 2011) (Table).

Petitioner filed the instant federal habeas action on September 30, 2011 (doc. 2). Respondent initially filed a motion to dismiss the petition as untimely (doc. 24), but subsequently withdrew the motion (doc. 29).

## II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas

review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.*

Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B) (i) there is an absence of available State corrective process; or
     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .

Case No.: 3:11cv484/MCR/EMT

State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.

---

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed.

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

Ground One: "Trial court'[s] denial of Mr. Harris' motion for judgment of acquittal was error: the evidence was insufficient to sustain conviction for burglary of an unoccupied dwelling. U.S. Constitution Amendment 5th, 6th, and 14th."

Petitioner argues his conviction violated his federal due process rights, because the evidence before the trial court was purely circumstantial and failed to eliminate all reasonable hypotheses of innocence (doc. 2 at 3–4; doc. 3 at 7–13). He asserts the State failed to establish that the premises, which was entered and from which items were removed, was a dwelling as defined by Florida law (doc. 3 at 8–9). He additionally asserts the State failed to establish he entered the premises to effect a burglary (*id.* at 9–12). Petitioner contends the state appellate court's adjudication of this claim on direct appeal was contrary to or an unreasonable application of Jackson v. Virginia, 433 U.S. 307 (1979) (doc. 2 at 4; doc. 3 at 9–10).

Petitioner also appears to argue the trial court erred by failing to give a proper curative instruction to the jury when the prosecutor incorrectly stated the law during closing argument (doc. 3 at 10–13). He argues the prosecutor improperly argued that Florida law created a "presumption" that a person in possession of recently stolen property is guilty of burglary (*id.* at 10). Petitioner asserts defense counsel objected to the prosecutor's statement, and the trial court sustained the objection but only instructed the jury to disregard the word "presumption" (*id.* at 10–11). Petitioner contends the trial court's failure to instruct the jury to disregard the prosecutor's entire statement left the jury to believe that under Florida law, a person in possession of recently stolen property is guilty of burglary (*id.* at 11–13).

Respondent contends Petitioner's claim presents only an issue of state law based upon Florida's circumstantial evidence rule, which is not cognizable in federal habeas (doc. 35 at 7–8). Respondent additionally contends even if Ground One presents a federal claim, Petitioner failed to exhaust it in state court, because he failed to present it as a federal claim on direct appeal of his conviction (*id.* at 8–11). Respondent contends the claim is now procedurally defaulted (*id.* at 11). Notwithstanding the procedural default, Respondent contends Petitioner's claim is without merit (*id.* at 11–13).

In Petitioner's reply, he contends that although he did not present his claim in exactly the same way in state and federal court, he presented the substance of his federal due process claim on direct appeal by arguing he was entitled to a judgment of acquittal because the State failed to prove that the premises was a "dwelling" as defined by Florida law (doc. 38 at 1–3). He additionally argues he is entitled to federal review of his claim, because his trial counsel and appellate counsel performed ineffectively in their representation (*id.* at 1–3, 7–9). Petitioner alleges he raised claims of ineffective assistance of trial counsel and appellate counsel in his Rule 3.850 motion and state habeas petition, respectively (*id.*).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by denying his motion for JOA because the circumstantial evidence presented by the State was insufficient to establish Petitioner either burglarized the structure in question, or stole anything, or aided and abetted another in doing so (Ex. F at 23–33). Petitioner additionally argued the State failed to establish that the premises which was entered and from which

items were removed constituted a dwelling, pursuant to Florida's burglary statute (*id.* at 31–33). Petitioner argued the trial court should have granted the motion for judgment of acquittal, because the evidence failed to satisfy Florida's circumstantial evidence rule (*id.*).

In Petitioner's appellate brief, he framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no reference to the United States Constitution or federal law, and he cited no federal cases. He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim. Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted. *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 F. App'x 689, (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 F. App'x 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."). *But see* Mulinix v. Sec'y for Dep't of Corr, 254 F. App'x 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where

petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[8]

Additionally, Petitioner's appellate brief included no argument regarding the trial court's alleged error in failing to give a proper curative instruction to the jury after the prosecutor argued that Florida law created a "presumption" that a person in possession of recently stolen property is guilty of burglary. Therefore, this claim was also not exhausted in the state courts.

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law. *See* Rodriquez v. State, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

As discussed *supra*, to overcome a procedural default such that this court may consider the merits of his claims, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. In Petitioner's reply, he alleges he is entitled to review of any procedurally defaulted claims, because he raised claims of ineffective assistance of trial counsel and appellate counsel in his Rule 3.850 motion and state habeas petition, respectively (doc. 38 at 1–3, 7–9). He further alleges the state court did not appoint counsel in the Rule 3.850 proceeding (*id.*).

Although ineffective assistance of counsel which rises to the level of a constitutional deprivation can serve as cause for purposes of a procedural default analysis, the issue of ineffective assistance must first be presented as an independent state claim and exhausted in the state courts. Murray, 477 U.S. at 488; Orazio v. Dugger, 876 F.2d 1508 (11th Cir. 1989). With regard to Ground One, the procedural default occurred in Petitioner's direct appeal. In Florida, a claim of ineffective assistance of appellate counsel is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App P. 9.141(d). The record demonstrates Petitioner presented a claim of ineffective assistance of appellate counsel to the First DCA, but it was

---

[8] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

not a claim concerning appellate counsel's failure to raise a federal claim regarding the trial court's denial of the motion for judgment of acquittal or the trial court's failure to give a proper curative instruction regarding the prosecutor's improper closing argument (*see* Ex. K). Instead, Petitioner argued appellate counsel was ineffective for failing to raise a claim of trial court error with respect to the court's including the language "remained in" when instructing the jury on the elements of burglary (*id.*). Petitioner thus failed to show cause for the procedural default of the two claims raised in Ground One. Moreover, Petitioner has not shown he is entitled to federal review of Ground One through the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Ground One is procedurally defaulted, and the merits of the claim will not be considered by this court.

      B.    <u>Ground Two: "Denial of effective assistance of counsel: failure of counsel to make contemporaneous objection to the State's improper closing argument and failure to preserve issue for appellant [sic] review. U.S. Constitution Amendments of the 5th, 6th, and 14th."</u>

Petitioner asserts defense counsel was ineffective for failing to object to the prosecutor's statements during closing argument that Petitioner was the person depicted in a surveillance video tape from a pawn shop wearing a white t-shirt with a peace sign on it and a ball cap (doc. 2 at 4; doc. 3 at 13–19). Petitioner states the prosecutor's key witness, Mr. Blue, testified Petitioner was wearing a black shirt when he transported Petitioner and Tameka Brown to the pawn shop (*id.*). Petitioner asserts there was no evidence that he was wearing a white t-shirt with a peace sign and a ball cap; therefore, the prosecutor mischaracterized the evidence to the jury (*id.*). Petitioner argues defense counsel should have objected to the improper argument, and had counsel done so, the issue would have been preserved for appellate review, and his conviction would have been reversed (*id.*). Petitioner asserts he raised this claim in his Rule 3.850 motion (doc. 2 at 4). He contends the state court's adjudication of the claim was based upon an unreasonable determination of the facts, and was contrary to or an unreasonable application of clearly established federal law (*id.*).

Respondent contends the state court correctly concluded that the prosecutor's comments did not constitute improper closing argument, because the prosecutor was merely drawing a reasonable conclusion from the evidence adduced at trial (doc. 35 at 13–19). Respondent further argues that even if the prosecutor's comments were arguably objectionable, Petitioner failed to show he was prejudiced by counsel's failure to object, because the comments did not render his trial fundamentally

unfair (*id.*). Therefore, the state court's adjudication of this claim was not contrary to or an unreasonable application of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) (*id.*).

        1.      Clearly Established Federal Law

     The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

     "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Chandler</u>, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide

latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 7 in his amended Rule 3.850 motion (Ex. R at 58–61). The state court applied the Strickland standard in adjudicating Petitioner's claims of ineffective assistance of counsel (Ex. V at 153–54). The state circuit court adjudicated this specific claim as follows:

> Defendant alleges in his seventh claim that counsel was ineffective for failing to object to the prosecutor's misstatement of the facts in evidence during his closing argument. Defendant alleges that no witness testified that Defendant was wearing a white shirt and ball cap; rather, one witness in particular testified that Defendant was wearing a black shirt at the time of the offense. Defendant alleges that the prosecutor's statement to the jury that Defendant was in a white shirt was an improper statement of the evidence and requires a new trial.

> "Closing argument presents an opportunity for both the State and the defendant to argue all reasonable inferences that might be drawn from the evidence." Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004). In this case, the evidence showed that Witness Blue had transported Defendant and [Tameka] Brown to the pawn shop[FN 14: See Attachment 3 at 100–01] where Brown had pawned several items, that the clerk knew Brown and Defendant from previous dealings and testified that Defendant had been with Brown during the transaction, that the pawn transaction took place between 1:48 and 1:53 pm, and that pictures from the surveillance camera show the clerk helping a black woman and a man in a white shirt and ball cap between 1:48 and 1:53 pm.[FN 15: Id. at 109–18 and 270–71. See also Attachment 5, photographic exhibits from trial.] The evidence was also undisputed that Defendant was wearing a white shirt at the time that his booking photograph was taken at the jail hours later.[FN 16: See Attachment 3 at 155, 158, 163–64, and 270–71. See also Attachment 5.] Therefore, it was a reasonable inference that could be drawn from the evidence that the man in the white shirt and ball cap on the video tape was indeed Defendant. While the jury could certainly have considered the testimony that Defendant had been wearing a black shirt on the day in question,[FN 17: See Attachment 3 at 167] it was not improper for the prosecutor to argue that Defendant had actually been the man on the video tape wearing the white shirt and ball cap. Additionally, defense counsel in his rebuttal argued, "The State says it submits, it submits that that's the defendant. Well, where is the proof that they have submitted to you that that's the defendant?"[FN 18: Id. at 274] Therefore, defense counsel was not ineffective in his handling of the prosecutor's closing argument. This allegation does not entitle Defendant to relief.

(Ex. V at 53–54). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. X).

Petitioner argues the state court's factual finding that pictures from the surveillance camera showed the pawn shop clerk helping a black woman and a man in a white shirt and ball cap between 1:48 and 1:53 p.m. was unreasonable, because the surveillance video was "highly distorted," and the facial features of the male depicted therein were indistinguishable (doc. 3 at 15). He additionally argues the pictures from the surveillance video showed the man from approximately just below shoulder level, and had the pictures been enlarged, they would have shown the peace sign on the man's shirt (*id.* at 15–16). Petitioner also asserts the evidence was disputed that he was wearing a white shirt at the time his booking photo was taken at the jail (*id.*).

Petitioner's assertion that the surveillance video was distorted and the facial features of the man were indistinguishable, and his assertion that the picture did not show a peace sign on the man's shirt, do not clearly and convincing rebut the state court's factual finding that the video depicted the pawn shop clerk helping a black woman and a man in a white shirt and ball cap between 1:48 and 1:53 p.m. on the date of the offenses. The pictures attached to the state court's written decision show the pawn shop clerk helping a black woman and man in a white shirt and ball cap, and one of the pictures shows a peace sign on the man's shirt (Ex. V at 229). Additionally, the booking photo attached to the state court's order supports the state court's findings that Petitioner was wearing a white shirt at the time his booking photograph was taken at the jail hours after the pawn shop video (Ex. V at 231). The record also supports the state court's factual findings as to the testimony adduced at trial, including testimony from Mr. Blue that he transported Petitioner and Tameka Brown to the pawn shop on March 12, 2006 (*see* Ex. B, trial transcript at 97–103, 165–67), and testimony from the pawn shop clerk that she knew Tameka Brown and Petitioner from previous dealings, she conducted a pawn transaction with Tameka Brown at 1:48 p.m. on March 12, 2006, and pictures from surveillance video at the pawn shop depicted the pawn transaction she completed between 1:48 and 1:53 p.m. on March 12, 2006 (*id.* at 109–26, 270–71). Additionally, the trial transcript shows that Mr. Blue testified he thought Petitioner was wearing a black shirt, but he was not sure (*id.* at 167).

To assess whether defense counsel performed unreasonably by failing to object to statements by the prosecutor or move for a mistrial, the court must determine whether counsel had a meritorious basis for doing so. Under Florida law, the standard for reviewing prosecutorial comments is the following:

Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). The prosecutor may not, however, "'inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.'" Jones v. State, 612 So. 2d 1370, 1374 (Fla. 1993) (quoting Bertolotti v. State, 476 So. 2d 130 (Fla.1985)). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper. Id. at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence. See United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury. See White v. State, 377 So. 2d 1149 (Fla. 1980).

Finally, "the limits of proper argument find their source in notions of fairness, the same source from which flows the right to due process of law." Houston v. Estelle, 569 F.2d 372, 380 (5th Cir. 1978). "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471, 91 L. Ed. 2d 144 (1986) (quoting Donnelly v. DeChristoforo,

416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).  Thus, to establish prosecutorial misconduct, a two-prong test must be satisfied:  (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair.  *See* United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citations omitted); Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985) (en banc), *vacated on other grounds*, 478 U.S. 1016, 106 S. Ct. 3325, 92 L. Ed. 2d 732 (1986), *reinstated*, 809 F.2d 700 (11th Cir. 1987); Dessaure v. State, 891 So. 2d 455, 464–65 (Fla. 2004) (an order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial).

Upon review of the evidence adduced at trial and the entirety of the arguments of the prosecutor and defense counsel during closing arguments (Ex. B, trial transcript), the undersigned concludes Petitioner failed to show that defense counsel's failure to object to the prosecutor's comment, that Petitioner was the man wearing the white t-shirt with the peace sign on it and a ball cap in the surveillance video and pictures, was unreasonable.  The comment was a permissible suggestion of inferences the jury may have reasonably drawn from the evidence.  Further, Petitioner failed to demonstrate a reasonable probability the outcome of trial would have been different if counsel had objected to the comment.  Therefore, the state court's adjudication of Ground Two was not an unreasonable application of Strickland.

C.     Ground Three:  "Denial of effective assistance of counsel:  failure to discuss with Defendant advisability of accepting or rejecting offered plea bargain contrary to the 5th, 6th, and 14th Amendments for [sic] the United States Constitution."

Petitioner asserts defense counsel was deficient by allowing him to reject a plea offer of a two-year sentence without giving him any advice as to the wisdom of rejecting the offer (doc. 2 at 4; doc. 3 at 19).  Petitioner concedes counsel advised him of the offer and "the possibilities that were faced," but Petitioner alleges counsel failed to advise him that co-defendant Tameka Brown had accepted the State's plea offer of eighteen months of probation in exchange for her testimony implicating Petitioner in the crimes (doc. 3 at 20).  Petitioner alleges he would have accepted the State's plea offer if counsel had informed him that Ms. Brown had agreed to testify against him (doc. 3 at 20–22; doc. 38 at 5).

Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (doc. 35 at 20–25).  Respondent submitted

an affidavit from Petitioner's trial counsel, Attorney Spiro T. Kypreos, stating (1) Petitioner was well aware that Ms. Brown might testify against him, (2) Petitioner was confident Ms. Brown would not testify at trial and that he would not be found guilty without her testimony, (3) counsel advised Petitioner that even without Ms. Brown's testimony, the State had a good case, and if she testified, it would only be worse for Petitioner, and (4) counsel advised Petitioner of each of the State's plea offers and to accept them (*id.* at 24–25; Ex. BB).  Attorney Kypreos also stated that on the day of trial, Petitioner rejected the State's offers of a three-year HFO sentence and a two-year HFO sentence (*id.*, ¶ 9).  Counsel states Ms. Brown did not appear in court that day and, it appearing very likely that she would not appear to testify against Petitioner, Petitioner rejected counsel's advice to take the plea offer (*id.*).  Counsel stated Petitioner believed that in the absence of Ms. Brown, he would win at trial (*id.*).  Counsel stated Petitioner was convicted despite the fact that Ms. Brown did not appear as a witness (*id.*).  Attorney Kypreos attached to his affidavit correspondence between him and Petitioner (Ex. BB, Exhibits).  In a letter from counsel to Petitioner dated August 4, 2006, counsel advised Petitioner of the maximum sentence be faced as a habitual felony offender if he was convicted of the charges (*id.*, Exhibit 1).  Counsel advised Petitioner that the prosecutor offered to allow Petitioner to plead guilty to the lesser included offense of burglary of a structure on the burglary count and as charged on the grand theft count with an HFO sentence of concurrent terms of forty-eight months in prison (*id.*).  Counsel "strongly recommended" that Petitioner accept the offer (*id.*).  In a letter from counsel to Petitioner dated September 29, 2006 (three weeks prior to Petitioner's trial), counsel advised Petitioner that the prosecutor offered to allow Petitioner to plead to trespass on the burglary count and as charged on the grand theft count with an HFO sentence of thirty-seven months in prison (*id.*, Ex. 5).  Counsel advised Petitioner that his minimum sentence under the sentencing guidelines was three (3) years (*id*.).  Counsel advised, "Take it." (*id.*).

In Petitioner's reply, he contends Attorney Kypreos's affidavit should not be considered by this court and should be stricken from the record, because it was not part of the state court record (doc. 38 at 5).  He asserts if the affidavit is accepted as part of the record in this case, an evidentiary hearing should be held (*id.*).

> 1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim. In the context of a plea bargain, the Supreme Court recently addressed the deficiency prong in Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012). Although the Supreme Court did not exclusively define the duties of counsel in plea bargaining, the Court has held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecutor to accept a plea on terms and conditions that may be favorable to the accused." *Id.*, 132 S. Ct. at 1408.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 6 in his amended Rule 3.850 motion (Ex. R at 55–58). In support of his claim, he submitted his own affidavit stating:

> . . . my trial attorney, Spiro T. Kypreos at 10:30 PM, called me on the telephone to inform me of a state's plea offer.
>
> Counsel Spiro T. Kypreos only told me of the sentence I faced upon a jury guilty verdict in trial. Trial counsel Spiro T. Kypreos never told me that Tameka Brown had accepted a plea bargain for eighteen (18) months probation.
>
> Attorney Spiro T. Kypreos never told me in our telephone conversation or any time thereafter, that Tameka Brown in exchange for eighteen (18) months probation gave a sworn statement implicating me committing the alleged crimes and that she would testify in trial against me. I did not discover the plea deal Tameka Brown made with the state until my sentencing after my trial, when Judge Bell put it in the record on the date of my sentencing. Had attorney Spiro T. Kypreos told me that Tameka Brown accepted a plea offer of 18 months probation and she gave a sworn statement implicating me committing the crimes, and that she would testify in trial against me, I would have accepted the state's plea offer of two (2) years because it would have resulted in a lesser sentence.

(*id.* at 70).

The state circuit court adjudicated the claim as follows:

> In this allegation, Defendant alleges that the State had offered Defendant a plea offer of two years in prison. Defendant alleges that when counsel told him about the offer, counsel did not inform Defendant that his co-defendant had accepted a plea agreement with the State in exchange for making a statement implicating Defendant in the crime. Defendant alleges that if he had known that Brown had given the statement and was willing to testify against him at trial, he would have accepted the plea agreement.

This allegation is facially insufficient in that Defendant has not given the Court any indication what advice counsel gave him that was deficient. Defendant admits that counsel informed him of the plea offer and informed him of the possible sentence that Defendant faced should he go to trial and be found guilty. Additionally, the record is clear that Brown had absconded before trial; hence, counsel cannot be considered deficient for failing to advise Defendant that his co-defendant would testify against him, when, in fact, she did not do so.

Furthermore, even had it been deficient of counsel not to inform Defendant of Brown's statement, Defendant would still be entitled to no relief. Defendant has not alleged that he was unaware that his co-defendant could be a potential witness against him. Therefore, Defendant has not shown that, "but for" counsel's alleged deficiency, he would have accepted the State's plea offer.

Moreover, Defendant has not alleged that he was unaware of the other witnesses and evidence that the State planned to, and actually did, use against him at trial. Neither the statement of the co-defendant nor her live testimony were introduced at trial; however, the State was still able to convince a jury beyond a reasonable doubt of Defendant's guilt using other evidence, including the testimony of the pawn shop clerk, the testimony of the neighbor whom Defendant had asked to transport him and the goods to the pawn shop, and the video surveillance photographs. Defendant has not, therefore, shown that he was unfamiliar with the State's case against him or the strength thereof when he determined whether to accept the proffered plea agreement. Consequently, the Court does not find that counsel was in any way deficient or that Defendant has shown prejudice in this claim, and Defendant is not entitled to relief.

(Ex. V at 158–59). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. X).

The federal habeas rules provide that the court must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 of the habeas rules to determine whether an evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases in the United States District Courts, R. 8(a). Rule 7 of the federal habeas rules provides the record may be expanded with additional materials relating to the petition, including affidavits. *Id.*, R. 7(a), (b). Rule 7 further provides the party against whom the additional materials are offered must have an opportunity to admit or deny the correctness of the materials. *Id.*, R. 7(c).

In this case, Petitioner has not shown grounds to strike counsel's affidavit from the record. Further, the only fact that is in dispute is whether Attorney Kypreos informed Petitioner that Tameka Brown had entered a plea agreement wherein she agreed to testify for the State in Petitioner's trial in

exchange for a probationary sentence. Petitioner states counsel did not advise him of this fact (Ex. R at 70). Attorney Kypreos states he advised Petitioner that Ms. Brown had "flipped" (*see* Ex. BB, Kypreos Aff. ¶¶ 3, 5). Assuming the truth of Petitioner's version of this fact, thus obviating the need for an evidentiary hearing, Petitioner is still not entitled to relief. Petitioner does not dispute that (1) counsel advised him of his maximum sentence exposure and his minimum sentence under the sentencing guidelines, (2) Petitioner was aware that Ms. Brown, as a co-defendant, was a potential witness against him, (3) counsel advised Petitioner that even without Ms. Brown's testimony, the State had a good case, and if she testified, it would only be worse for Petitioner, (4) counsel communicated all of the State's plea offers, including the two-year offer, (5) counsel advised Petitioner to accept the plea offers, (6) Petitioner was confident Ms. Brown would not testify at trial, (7) Petitioner believed that he would not be found guilty without her testimony, and (8) Ms. Brown was not in court on the day of Petitioner's trial. In light of these facts, Petitioner failed to demonstrate a reasonable probability he would have accepted the State's plea offer if counsel had advised him that Ms. Brown had entered a plea agreement with the State to testify against him. Therefore, he is not entitled to relief on Ground Three.

> D.     <u>Ground Four: "Court abused its discretion by allowing hearsay testimony: testimony presented was not subject of [sic] the exception rule contrary to the 5th, 6th, and the 14th Amendments for [sic] the United States Constitution."</u>

Petitioner asserts that during his trial the State introduced testimony of Mr. Kearby regarding his conversation with Mr. Blue (doc. 2 at 5; doc. 3 at 23–24). Petitioner contends defense counsel objected to the testimony on hearsay grounds, but the trial court overruled the objection on the ground that Mr. Kearby's testimony regarding the "topic" of his conversation with Mr. Blue was admissible (doc. 3 at 23–24). Petitioner states Mr. Kearby (the victim of the burglary and theft) testified that Mr. Blue told him he had seen the items that were missing from Kearby's property, and Blue told him the items were taken to the pawn shop (*id.* at 24). Petitioner contends the testimony was inadmissible hearsay, and it was unduly prejudicial; therefore, the trial court erred by admitting the testimony (*id.* at 23–24).

Respondent contends Petitioner's claim is purely a matter of state law and thus not cognizable in federal habeas (doc. 35 at 25–26). Respondent additionally contends Petitioner did not exhaust this claim, because although he raised a claim of trial court error on direct appeal with respect to the

court's admission of the testimony, Petitioner did not present it to the state courts as a federal claim (*id.* at 26–29). Respondent argues Petitioner may not properly return to state court to present his claim, therefore, it is procedurally defaulted (*id.* at 28–29).

In Petitioner's reply, he contends that although he did not present his claim in exactly the same way in state and federal court, he presented the substance of his federal claim on direct appeal by arguing the trial court erred by admitting the hearsay testimony, and the testimony was prejudicial (doc. 38 at 6–7). He additionally argues he is entitled to federal review of his claim, because his trial counsel and appellate counsel performed ineffectively in their representation (*id.* at 7–9). He alleges he raised claims of ineffective assistance of trial counsel and appellate counsel in his Rule 3.850 motion and state habeas petition, respectively (*id.*).

The state court record demonstrates that in Petitioner's brief on direct appeal of his conviction, he argued the trial court erred by allowing Mr. Kearby's testimony regarding his conversation with Mr. Blue (Ex. F at 33–34). Petitioner argued admission of the testimony was "severely prejudicial" (*id.* at 34). In framing his claim of trial court error, Petitioner did not make any reference to federal law, and in the body of his argument he made no reference to the United States Constitution or federal law, and he cited no federal cases (*id.*). Nothing in Petitioner's brief put the state court on notice that the issue was being presented as a federal constitutional claim. Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the admission of Mr. Kearby's testimony was not fairly presented to the state courts as a federal constitutional claim and is thus unexhausted.

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claims would be procedurally barred under Florida law. *See* Rodriquez, 919 So. 2d at 1262 n.7 (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); Smith, 445 So. 2d at 325 ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Additionally, for the reasons discussed *supra* in Ground One, Petitioner failed to show he is entitled to review through the cause and prejudice or fundamental miscarriage of justice exception to the procedural bar. Therefore, Ground Four is procedurally defaulted and the merits of the claim will not be considered by this court.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael D. Crews is substituted for Ken Tucker as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 2) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 18th day of January 2013.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**